# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-CC-00262-COA

| | |
|---|---|
| **LORNA SHIRD AND CARRIE CUMMINS** | **APPELLANTS** |
| **v.** | |
| **MISSISSIPPI STATE DEPARTMENT OF MENTAL HEALTH** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 12/29/1998 |
| TRIAL JUDGE: | HON. ERMEA JACKSON RUSSELL |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | GAIL S. AKIN |
| ATTORNEY FOR APPELLEE: | MELISSA S. BARIA |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | DENIAL BY THE EMPLOYEE APPEALS BOARD OF REQUEST FOR PROMOTION AFFIRMED. |
| DISPOSITION: | AFFIRMED - 08/15/00 |
| MOTION FOR REHEARING FILED: | 8/29/2000; denied 10/17/2000 |
| CERTIORARI FILED: | 10/31/2000; granted 12/29/2000 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. This is an appeal from the Circuit Court of Hinds County sitting as an appellate court to review a decision of the Mississippi Employee Appeals Board, an administrative tribunal established to review public employee grievances from personnel actions taken within the various agencies of the State of Mississippi. The appellants are Lorna Shird and Carrie Cummins, both of whom were employed at the Hudspeth Regional Center in the position known as Associate Psychologist. Their grievance consisted of a complaint that the director of that institution, Dr. John Lipscomb, improperly thwarted their opportunity to advance to the next higher level of Psychologist I by hiring other less experienced and less qualified individuals as Associate Psychologists and shortly thereafter reclassifying those employees to Psychologist I without formally declaring a vacancy for the Psychologist I position and complying with State Personnel Board regulations that permit some measure of competition for such positions.

¶2. In fact, Shird and Cummins prevailed on the merits before the Employee Appeals Board since the Board concluded that the director was, in fact, employing a subterfuge to circumvent the Personnel Board regulations for filling vacant Psychologist I positions. Because neither side in this appeal challenges this determination by the Employee Appeals Board, it is not necessary to delve into the intricacies of the State Personnel Board system except for a brief review to facilitate a better understanding of these employees' grievances.

¶3. Typically, when a state agency has a vacancy that comes under the authority of the State Personnel Board, the agency must notify the Personnel Board of its intention to fill that vacancy. The Personnel Board then becomes responsible for preparing a register of persons known to have an interest in the position and who have been certified to meet the previously-determined and published qualifications for the position. Typically, in advance of preparing this register of eligible potential employees, the Personnel Board will undertake to give notice of the vacancy through a process referred to as "posting." However, as to certain positions within state agencies, the State Personnel Board has approved a procedure of reclassification that is, in effect, a form of promotion by which an employee working in one job classification may be reclassified to a higher level position in the same general field of endeavor without the necessity of declaring the higher level position vacant and proceeding with the preparation of a register of eligible people. In this case, the Employee Appeals Board concluded that Dr. Lipscomb was, in fact, filling Psychologist I positions but was doing so in a manner having the effect - whether it was his intent or not - of denying Shird, Cummins, and others similarly situated from being considered for those vacancies. Dr. Lipscomb was doing so, according to the Appeals Board, by purporting to fill an Associate Psychologist position at the same level as Shird and Cummins, but doing so with a firm prior commitment with the new employee that within a very short time that person would be reclassified as a Psychologist I.

¶4. Shird and Cummins further complained that, when they confronted Dr. Lipscomb about his promoting others with less time on the job and whom they believed to be less qualified, Dr. Lipscomb informed them that they could not be considered for the Psychologist I position unless they were enrolled in a doctoral program and signed a contract that, if they ceased to pursue their doctoral degree, they would revert to the Associate Psychologist level. It was the position of Shird and Cummins that the minimum qualifications for Psychologist I were, by law, to be established by the State Personnel Board and that Dr. Lipscomb, in his capacity as director of Hudspeth, did not have the legal authority to require additional requirements of eligibility for the position. The Employee Appeals Board agreed with Shird and Cummins on this issue and concluded that their eligibility - to be distinguished from their entitlement - to serve in the position of Psychologist I must be determined solely by Personnel Board criteria unsupplemented by Dr. Lipscomb's own additional requirements.

¶5. As we have observed, the findings of the Employee Appeals Board in regard to the propriety of the manner Dr. Lipscomb was using to fill Psychologist I positions are not in dispute before this Court. The only real issue of consequence in this appeal is the proposition advanced by Shird and Cummins that, after having prevailed on the merits of their grievance before the Employee Appeals Board, they did not receive the full relief to which they believed themselves entitled. They claim that, once it was demonstrated (a) that they both met the minimum qualifications for the position of Psychologist I as established by the Personnel Board, and (b) that they had been previously excluded from consideration for vacant Psychologist I positions by the hiring practices of Dr. Lipscomb, they were entitled to the relief of advancement to Psychologist I together with back pay from the time these improper hiring practices began.

¶6. The Employee Appeals Board concluded that this relief was not appropriate since proving that an employee meets the minimum qualifications for a higher level position, standing alone, does not establish that person's entitlement to advancement to that position. The only relief afforded these employees was that these individuals "should be given the consideration for that position [Psychologist I] because they meet the minimum requirement as set out and established by the State Personnel Board and not rejected because they did not meet the additional and special requirement of Dr. Lipscomb."

¶7. Our review of a decision of the Employee Appeals Board, as in other administrative appeals, is limited. If the decision (a) was supported by substantial evidence, (b) was not arbitrary and capricious, (c) was within the power of the administrative agency to make, and (d) did not violate a statutory or constitutional right of the aggrieved employees, then we must affirm. *Miss. Employment Sec. Comm'n v. Harris,* 672 So. 2d 739, 741 (Miss. 1996). In this case, Shird and Cummins complain that, having prevailed on the merits of their claim, they have obtained a hollow victory since they have been denied any effective relief. In considering the four areas of appropriate inquiry when this Court is asked to review a decision of the Employee Appeals Board, we conclude that the appellants' complaints can best be viewed as a claim that the Board's failure to grant immediate promotion and back pay on these facts was an arbitrary and capricious decision.

¶8. There is at least a suggestion that it was within the power of the Employee Appeals Board to grant the more drastic relief sought by Shird and Cummins. In *Mississippi Employment Security Commission v. Collins,* 629 So. 2d 576 (Miss. 1993), the Mississippi Supreme Court considered a case where the Appeals Board ordered Collins, an employee of the Employment Security Commission, promoted to the next available higher position for which she was qualified. *Id.* at 577. Collins had alleged that she had been denied promotions through discriminatory practices based on her age and the fact that she was handicapped. *Id.* Though the supreme court reversed the decision based on a finding that the Board had employed the wrong standard to determine the presence of discriminatory practices, there was no suggestion that the remedy of mandating that a minimally-qualified individual be advanced to an open higher position was one beyond the power of the Appeals Board.

¶9. However, even assuming that the more drastic relief sought by Shird and Cummins was within the authority of the Employee Appeals Board to grant, that does not necessarily mean that some lesser remedy might not also be within the discretionary authority of the Board. In the case now before the Court, there was no evidence that there were presently-available Psychologist I positions at Hudspeth or that the employing agency had funds available in its budget to meet the additional salary requirements of two more Psychologist I positions in its operation. Even in *MESC v. Collins*, Collins was not given immediate advancement by the Employee Appeals Board, but rather the employing agency was ordered to advance her to the next available slot. In this case, the Employee Appeals Board prospectively removed the unauthorized job requirements imposed by Dr. Lipscomb and ordered that these employees receive consideration for reclassification (or, arguably, for consideration for any posted Psychologist I positions) based strictly on their own merits and of the fact that they both met the minimum requirements to fill the Psychologist I position. While this relief was not as complete as that afforded Collins - which would have required a determination that Shird and Cummins automatically be advanced to the next available Psychologist I slots at Hudspeth - we nevertheless find that the relief granted was within the range of discretion afforded the Employee Appeals Board in fashioning a remedy where an employee has demonstrated that she has been "adversely affected as to compensation or employment status" within the meaning of Section 25-9-127(1) of the Mississippi Code.

¶10. Finally, we note that Shird and Cummins raise three additional issues in this appeal. We find that two of those issues have been moot from the outset of this appeal since they involved questions relating to the propriety of their employer's personnel actions. In one issue, Shird and Cummins question Dr. Lipscomb's authority to impose additional requirements on them beyond those set out by the Personnel Board before he would consider them for elevation to Psychologist I. That is moot in this Court since Shird and Cummins prevailed on the merits of that issue before the Employee Appeals Board. The second issue involved the

proposition that Shird and Cummins were wrongfully denied the opportunity to apply for vacant Psychologist I positions. Again, that issue is not in dispute since their employing agency, as appellee, does not contest the Board's determination of that issue in favor of Shird and Cummins. As a third issue, Shird and Cummins raise the question of whether the Employee Appeals Board had the authority to afford them the relief they sought, *i.e.,* immediate elevation to Psychologist I and back pay. We have already determined that it is at least arguable that the Appeals Board had such authority. However, we find it unnecessary to reach that question since we have also determined that the relief actually granted (a) was within the Board's authority, (b) was designed to address the grievances presented, and thus, (c) did not appear to be an arbitrary or capricious result on the facts. Therefore, we conclude there to be no purpose in considering these issues further since, even conceding that all three have merit, the result in the case would be the same.

¶11. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, AND THOMAS, JJ., CONCUR. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, J. MYERS, J., NOT PARTICIPATING.**

PAYNE, J., DISSENTING:

¶12. With great appreciation for the majority and its author, I simply must dissent. When I read this opinion I thought about some old sayings, too familiar to demand citation of source. They are: "The operation was a success, but the patient died;" or "He won the battle but lost the war;" or "No good deed goes unpunished."

¶13. If I understand this case correctly, the employees were successful in getting the court to rule that their employer had indeed violated the rules of procedure set forth by the Personnel Board which governed the selection or promotion of employees for public positions within the Mississippi State Department of Mental Health. Therefore, there is no question but that the employer was wrong. However, the remedy offered for the labors of the wronged employees was for them to stand in line for the next job opening, which they could have done anyway without going to court to reveal the wrong done to them. That reminds me of another saying: "There is something wrong with this picture." The Mississippi courts have addressed cases such as the present and have presented viable remedies for aggrieved employees who find themselves in such unfortunate situations.

¶14. In *Tillmon v. Miss. State Dept. of Health*, 749 So. 2d 1017 (Miss. 1999), the supreme court found that the EAB erred in failing to find that the MSDH erred in not giving a qualified employee notice that a vacancy for which he was qualified had occurred. In reversing the EAB and the circuit court, the supreme court stated, "We cannot say that [the employee] would have been promoted to the position, nor can we say that he would not have been promoted. He should, however . . . have been given a fair chance at receiving the promotion." *Tillmon*, 749 So. 2d at (¶20). As a remedy, the supreme court remanded back to the EAB "with directions that it enter a judgment declaring the Branch Director II position vacant, and no later than thirty days after that declaration the Department of Health shall promptly fill the vacancy in the manner prescribed by law." *Id.* at (¶27).

¶15. In *Phillips v. Mississippi Veterans' Home Purchase Bd.,* 674 So. 2d 1240 (Miss. 1996), the State Personnel Board (Board) abolished Phillips's position of real estate appraiser due to "a material change in

the duties of the position and a shortage of work to justify the position." *Id.* at 1241. Phillips claims the Board eliminated his position solely because members of the Board disagreed with Phillips's personal and political views. Finding Phillips's argument persuasive, the Employee Appeals Board (EAB) ordered Phillips to be reinstated with back pay, finding the Board's eliminating the position was personal toward Phillips and not as the Board alleged, that the position was no longer needed. The circuit court ruled that the EAB ruled outside the scope of its authority in reinstating Phillips, and on appeal the supreme court reversed, finding persuasive the Board's argument that "only 'grievable' issues may be appealed and that termination or layoff from duties because of shortage of funds or work is a 'non-grievable' issue." *Id.* at 1242.

¶16. The *Phillips* majority agreed that the Board had reasonable basis for eliminating Phillips's position and reinstated the decision of the circuit court in agreement with this decision. However, Justice Prather, joined by three other justices, dissented stating the decision of the EAB "was in compliance with the law, was supported by substantial evidence, and was neither arbitrary nor capricious." *Id.* at 1245. The dissent's conclusion that Phillips should have been reinstated with backpay offers us another possibility for retribution when an employee is treated unfairly by his employer.

¶17. In *MESC v. Collins*, 629 So. 2d 576 (Miss. 1993), Collins had been employed with the MESC since 1975 and was passed over for a promotion for reasons which, she claimed, were related to her age and disability. The supreme court found that, despite the negative testimonies from witnesses concerning Collins's poor job performance, Collins, by virtue of her tenure, was due consideration for a promotion. The court ordered that the "MS Employment Security Commission at the next available opening promote the Appellant, Joan C. Collins, to a position at least one grade ahead of the one that she now occupies[;] also, the MS Employment Security Commission is instructed to make this promotion only when a position becomes available that the Appellant is qualified for and capable of successfully fulfilling." *Id.* at 579.

¶18. Also pertinent to note is that in federal court, where a private party sues to show the wrongful act of a governmental entity, if the plaintiff succeeds in showing that the government acted wrongly, the remedy includes damages and the payment of the plaintiff's attorneys' fees. The theory there is that the private plaintiff did the work of the attorney general and therefore should be compensated for the expense in addition to winning an award to remedy the wrong. *See McGinnis v. McWherter,* 871 F.2d 1310 (6th Circ. 1988) and *Commonwealth of Pennsylvania v. Charleroi Area Sch. Dist.,* 63 F.R.D. 440 (W.D. Pa. 1973). Mississippi courts have addressed this same issue and offer us various remedies from which to choose.

¶19. The *Canton Farm Equip., Inc., v. Richardson,* 608 So. 2d 1240, 1255-56 (Miss. 1992), case from the Mississippi Supreme Court shows us how to apply the "private attorney general" theory to award attorney fees in a case where a private citizen has acted in the stead of an attorney general.[1]

> It might be that a person acting as a private attorney general should be reimbursed for attorneys fees. In the end, the Circuit Court denied Canton's request because "the statute [Section 31-7-57] does not mention attorneys fees." It is certainly true that in the great majority of instances where this Court has considered requests for attorneys' fees, the Court has acted on the basis of statutory authority. We have long recognized, however, that a trial court may award attorneys' fees where the evidence is such that it justifies an award of punitive damages.

*Canton*, 608 So. 2d at 1255-56. The *Canton* court also referred to the case of *Smith v. Dorsey*, 599 So. 2d 529, 533 (Miss. 1992).

In *Smith*, the Court had before it a substantially analogous circumstance in which school board members had authorized illegal contracts. In addition to awarding compensatory damages, the trial court in Smith assessed one dollar in punitive damages and then ordered that the defendant school board members pay the plaintiffs' reasonable attorneys' fees. This Court affirmed, stating: We find no abuse of discretion in the Chancery Court's allowance of all fees in this case. We consider this case to be the classic public interest lawsuit, where the plaintiffs at great trouble and expense have rendered an invaluable public service by bringing the wrongdoers to account.

*Canton,* 608 So. 2d at 1256 (citing *Smith*, 599 So. 2d at 550). In the present case, just as in *Canton* and *Smith*, persons have been wronged at the hands of a state agency. Though the award of attorney fees is set aside only for those cases in which punitive damages could have been awarded, I find it noteworthy to include this discussion as a viable remedy for an aggrieved employee. I also find it important for the majority to realize that this and the other aforestated remedies are available and should have been included in the majority's ruling rather than "leaving the appellants hanging" with no recourse but to take this winning appeal and go stand in line again for the next job.

¶20. Reviewing all the aforementioned cases, many remedies have been used in this state to compensate the aggrieved employee who was wrongly terminated from his or her employ with a state agency or who was erroneously passed over for a promotion or not given opportunity to apply for such promotion. In the present case, though the majority does correctly find that Shird and Cummins were wrongly denied opportunity to apply for the vacant position, the majority fails to provide a remedy.

¶21. Though not entirely on point because this is a state circuit court case, I think that one particular principle of justice might be reviewed to show why I believe that the remedy fashioned by the court is inadequate. Namely, in Warner's Griffith Miss. Chancery Practice, § 35, the author discusses the maxim, "*Equity will not suffer a wrong without a remedy*." The majority fails to provide such remedy, and I would urge that the DMH review the remedies previously afforded to aggrieved employees in our state and afford Shird and Cummins a remedy beyond that of simply allowing them to "stand in line" for the next vacancy. Absent such remedies being provided to the appellants, I must dissent.

### IRVING, J., JOINS THIS SEPARATE WRITTEN OPINION.

1. This is not a case of a public employee relationship with a public agency, per se. However, it is analogous to such a relationship and involves the appellant corporation, acting akin to a public employee, bidding to sell two backhoes to a public agency, the Madison County Board of Supervisors.